**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:39 PM August 4, 2014**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| GEORGE DAVID KARN AND | ) CASE NO. 13-62446 |
| DEBORAH ELLEN KARN | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION (NOT** |
| | ) **INTENDED FOR PUBLICATION)** |
| | ) |

George David Karn and Deborah Ellen Karn (collectively, "Debtors") claim a $24,387.00 bankruptcy exemption in funds derived from an individual retirement account, better known as an IRA, currently held in a business checking account. Toby L. Rosen, the chapter 13 panel trustee ("Trustee"), filed an objection to Debtors' IRA exemption. The court held a hearing on June 6, 2014, where the matter was taken under advisements. Debtors and Trustee have each filed briefs in support of their positions. The following constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## Facts

Debtors operate a business known as D&D Antiques and Collectibles ("D&D") as a sole proprietorship,[1] which buys and sells antiques at an antique mall in Strasburg, Ohio. To assist in the management of D&D, Debtors maintain a business checking account at First Merit Bank under the name "Deborah E. Karn DBA D&D Antiques & Collectibles" (the "D&D Account"). D&D is a profitable enterprise, generating monthly revenue of approximately $14,000.00, with monthly profits around $2,500.00. (Employee Income Rs., Oct. 4, 2013, ECF No. 4). In addition to the D&D Account, Debtors also maintain a personal checking account at Friends and Family Credit Union. D&D is Debtors' only form of employment, and along with social security income of $1,031.00 per month, Debtors' only source of income.

In August of 2013, Debtors withdrew $38,666.69 from an IRA held by Raymond James, of which $3,888.89 was removed as federal withholdings. The remaining $35,000.00 was deposited into the D&D Account on July 17, 2013. Income generated by D&D is also deposited into the D&D Account. Debtors pay expenses out of the D&D Account as well, some of which appear to be business related (payments to the State of Ohio for sales tax or to craft wholesalers), while others look like personal expenses (payments to Dairy Queen or to grocery stores). The court is unable to classify numerous other expenses as personal or business, such as payments to power and communications companies or a large number of checks without any indication of purpose. Based on the information provided, the D&D account is used for both business and personal expenses.

Debtors filed a voluntary chapter 13 bankruptcy petition on October 14, 2013. According to Debtors' bankruptcy petition, 85% of Debtors' liabilities relate to unpaid medical bills. Included within Debtors' bankruptcy petition is Schedule C, which lists the property a debtor claims as exempt from the bankruptcy process. While Debtors amended their schedules a number of times, Debtor's most recent Schedule C, filed on March 31, 2014, lists an exemption of $24,387.00 in an IRA, which Debtors argue is the amount remaining from the $35,000.00 deposit from Raymond James into the D&D Account. On April 4, 2014, Trustee objected to Debtors' claimed IRA exemption. Trustee makes three main arguments: (1) Debtors' IRA funds were improperly commingled with non-exempt funds; (2) Debtors' IRA funds were improperly used for the operations of D&D, not for Debtors' retirement; and (3) Debtors' retirement funds in the D&D account no longer qualify as an IRA under the Internal Revenue Code. Debtors contest each of Trustee's arguments.

---

[1] Debtors' brief refers to D&D as a sole proprietorship, but the ownership structure is unclear. Trustee does not dispute D&D's business structure. According to the IRS, a husband and wife cannot jointly own a business as a sole proprietorship. However, a sole proprietorship is possible if one spouse owns the business with the other working as an employee. Otherwise, the business can be structured as a partnership or a qualified joint venture. As the exact structure of D&D does not alter the outcome of the opinion, the court will refer to D&D as a sole proprietorship. Entities, Internal Revenue Service (Jan. 1, 2014), http://www.irs.gov/Help-&-Resources/Tools-&-FAQs/FAQs-for-Individuals/Frequently-Asked-Tax-Questions-&-Answers/Small-Business,-Self-Employed,-Other-Business/Entities/Entities.

2

**Law & Analysis**

A bankruptcy case begins when a debtor files a bankruptcy petition in a bankruptcy court. 11 U.S.C. § 301. The start of the case creates a bankruptcy estate, which contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, specific property of a debtor is excluded from the bankruptcy estate via statutorily created safe harbors known as exemptions. 11 U.S.C. § 522; In re Yost, 2014 WL 2547714, at *1 (Bankr N.D. Ohio 2014). "An exemption withdraws an interest from the bankruptcy estate, and consequently from the creditors, for the benefit of the debtors." Baumgart v. Alam (In re Alam), 359 B.R. 142, 146–47 (B.A.P. 6th Cir. 2006). The United States Bankruptcy Code ("the Code"), in a showing of deference to state rights, allows each state to choose one of three exemption options: (1) allow a debtor to elect the federal exemptions under § 522 of the Code; (2) allow a debtor to elect State law exemptions, which in Ohio are contained in O.R.C. § 2329.66; or (3) allow a debtor to choose between the federal or state exemptions. 11 U.S.C. § 522(b); In re Pursley, 2014 WL 293557, at *2 (Bankr. N.D. Ohio 2014); In re Yost, 2014 WL 2547714, at *2. The Ohio Legislature choose option two, only allowing a debtor domiciled in Ohio to use the exemptions from the Ohio Revised Code. O.R.C. § 2329.662.

In a chapter 7 liquidation, the benefit of exemptions are easily and immediately clear, as exempt property is not liquidated to pay creditors and is instead retained by the debtor. 11 U.S.C. § 726; In re Yost, 2014 WL 5247714, at *2. In a chapter 13 reorganization, instead of a debtor's assets being liquidated to pay creditors, the debtor agrees to make monthly payments to creditors over a three to five year period. 11 U.S.C. § 1322. The size of a debtor's monthly payments are based on a number of considerations, but creditors must receive payments greater than or equal to distributions from a hypothetical chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). Therefore, when an exemption removes property from a debtor's bankruptcy estate, the amount creditors would receive in a chapter 7 liquidation decreases, and consequently a debtor's chapter 13 payment floor may also be reduced. See id.

Bankruptcy exemptions were adopted to guarantee debtors a minimum standard of living after bankruptcy, or, in other words, "to ensure that debtors and their families have sufficient means to support themselves through difficult times without becoming a public charge." In re Wood, 459 B.R. 263, 269 (Bankr. S.D. Ohio 2011). Retirement account exemptions further this goal by helping to assure debtors retain sufficient assets to care for themselves, and their dependents (if any), once a debtor's health starts to fail or he reaches retirement age. In re Weaver, 98 B.R. 497, 499 (Bankr. D. Neb. 1988) (stating that the purpose behind retirement exemptions is to provide assets "reasonably necessary for support of the debtors and any dependents of the debtor on account of illness, disability, death, age or length of service"). Without retirement exemptions, the costs associated with a debtor's retirement would often fall more heavily onto the government, in essence shifting losses from creditors to taxpayers. With these factors in mind, bankruptcy courts are "[g]uided by the principal that exemptions are to be construed liberally in favor of debtors." In re Wood, 459 B.R. at 269 (internal quotation marks omitted); see also In re Wengerd, 453 B.R. 243, 246–47 (B.A.P. 6th Cir. 2011); Daugherty v.

3

Cent. Trust Co. of Ne. Ohio, N.A., 504 N.E.2d 1100, 1103 (Ohio 1986). Therefore, when "it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." In re Wood, 459 B.R. at 269 (internal quotation marks omitted).

**1. The Source of Debtors' Deposit into the D&D Account is an Exempt IRA**

Trustee and Debtors first disagree on the source of the $35,000.00 deposit into the D&D Account, of which Debtors' claim $24,387.00 as currently exempt. Under the Federal Rules of Bankruptcy Procedure, the party challenging an exemption bears the burden of showing the exemption is improperly claimed. Fed. R. Bankr. P. 4003. Trustee states, without analysis, that she disputes the source of the funds in the D&D Account. The court received documentary evidence showing a $38,888.89 withdrawal from Debtors' "IRA Freedom" account held with Raymond James, of which $3,888.89 was removed as federal withholdings. The court also received a D&D bank statement showing a $35,000.00 deposit from Raymond James. These documents are strong evidence that Debtors' $35,000.00 deposit into the D&D Account originated from Debtors' qualified IRA account held at Raymond James. Because Trustee has not provided any countervailing evidence, Trustee has failed to carry her burden. However, simply because an amount is derived from an exempt source does not necessarily mean the asset retains the exemption.

**2. Debtors' Retirement Funds Held in the D&D Account Remain Exempt**

The Ohio Legislature, when opting out of the federal exemptions, enacted a scheme allowing debtors domiciled in Ohio to hold property included within statutorily defined categories "exempt from execution, garnishment, attachment, or sale." O.R.C. § 2329.66(A). The Ohio statute includes a number of exempt categories, such as cash on hand, vehicles, real property used as a primary residence, certain retirement accounts, and many others. Id. § 2329.66(A). The wording of the statutory exemption for IRAs is broad, protecting a debtor's "rights or interests in the assets held in, or to directly or indirectly receive any payment or benefit under, any individual retirement account." Id. § 2329.66(a)(10)(c). However, the Ohio legislature included a number of limitations on the type and amount of retirement assets that a debtor may hold exempt. Id. Specifically, the Ohio statute exempts IRAs to the extent:

(i)     Contributions of the [debtor] were less than or equal to the applicable limits on deductible contributions to an individual retirement account . . . in the year that the contributions were made . . . ;
(ii)    Contributions of the [debtor] were less than or equal to the applicable limits on contributions to a Roth IRA . . . in the year that the contributions were made;
(iii)   Contributions of the [debtor] are within the applicable limits on rollover contributions . . . .

Id. § 2329.66(a)(10)(c)(i)–(iii). These limits only allow debtors to exempt contributions up to IRS tax deductibility limits, prohibiting a debtor from shifting large portions of cash into an

4

exempt retirement account on the eve of bankruptcy. While the statute is clear that assets remaining in an authorized IRA are exempt, Debtors' IRA withdrawal, deposit into the D&D Account, and subsequent use of the funds makes the application of the exemption to Debtor's IRA less certain.

**A. Commingling an Otherwise Exempt IRA with Nonexempt Assets Does Not Destroy the Bankruptcy Exemption**

In Ohio, commingling exempt and nonexempt assets does not immediately result in the loss of a bankruptcy exemption. In the seminal case of <u>Daugherty v. Central Trust Co.</u>, the Supreme Court of Ohio was dealing with an Ohio exemption for a debtor's personal wages, but the statue only exempted wages due to the debtor from his employer, not personal earnings already received. 504 N.E.2d at 1103. The court ultimately concluded that personal earnings retain exempt status even after receipt by a debtor and deposit into a personal checking account. <u>Id.</u> The court noted that the Ohio exemption statue allows debtors to hold specifically enumerated property "exempt from execution, garnishment, attachment, or sale." O.R.C. § 2329.66(A). The broad language, and especially the prohibition on attachment, "strongly indicates" that property in the debtor's possession, even when commingled with nonexempt property, retains exempt status. <u>Daugherty</u>, 504 N.E.2d at 1103. The court also weighed the exemption policy of protecting assets "intended primarily for maintenance and support of the debtor's family." <u>Id.</u> The court did not believe the Ohio legislature intended to create a system where personal earnings are exempt before paid to an employee, but lost as soon as received by the employee. <u>Id.</u> ("[L]egislative intent would be frustrated if exempt funds were automatically deprived of their statutory immunity when deposited into a checking account which a depositor commonly maintains in order to pay by check those regular subsistence expense he incurs."). <u>Daugherty</u> is not without limits however, as to retain exempt status "the source of the exempt funds [must be] known and reasonably traceable." <u>Id.</u> at 1103.[2]

Trustee attempts to limit <u>Daugherty</u> to its facts, claiming the case only applies to deposits of personal earnings into personal checking accounts. However, courts have consistently expanded the scope of <u>Daugherty</u>, extending exempt status to the following classes of assets even after being commingled with nonexempt assets: social security benefits, welfare benefits, disability retirement payments, unemployment compensation, lump sum insurance disbursements, income tax refunds, student loan disbursements, proceeds from the sale of a residence subject to the homestead exemption, and various types of retirement accounts. <u>In re Alam</u>, 359 B.R. 142 (lump sum disability insurance payments); <u>In re Maine</u>, 461 B.R. 723 (Bankr. N.D. Ohio 2011) (child tax and earned income tax credits); <u>In re Wood</u>, 459 B.R. 268 (earned income tax credit); <u>In re Perkins</u>, 2011 WL 4458961 (Bankr. N.D. Ohio 2011) (student loan disbursements); <u>In re Lantz</u>, 451 B.R. 843 (Bankr. N.D. Ill. 2011) (proceeds from the sale of a residence under the homestead exemption); <u>In re Patterson</u>, 2010 WL 3606893 (Bankr. N.D. Ohio 2010) (child tax and earned income tax credits); <u>In re Cook</u>, 406 B.R. 770 (Bankr. S.D. Ohio 2009) (Ohio Public Employee Retirement System disability benefits); <u>In re Sparks</u>, 410 B.R. 602 (Bankr. S.D. Ohio 2009) (unemployment compensation); <u>In re Phillips</u>, No. 01-60366

---

[2] The definition and application of "reasonably traceable" will be discussed later in the opinion.

5

(Bankr. N.D. Ohio 2001) (deferred compensation plans); In re Hickox, 215 B.R. 257 (Bankr. M.D. Fla. 1997) (individual retirement accounts); In re Bresnahan, 183 B.R. 506 (Bankr. S.D. Ohio 1995) (pension distributions); GMAC v. Deskins, 474 N.E.2d 1207 (Ohio 1984) (social security benefits). Also importantly, the Supreme Court of Ohio in Daugherty favorably cited cases holding that social security and welfare benefits retain exempt status when deposited into personal bank accounts. Philpott v. Essex Cnty. Welfare Brd., 409 U.S. 413 (1973) (social security benefits); Goodyear Serv. Store v. Speck, 355 N.E.2d 886 (Ohio Ct. App. 9th 1976) (welfare benefits).

As the above citations make clear, assets withdrawn from an exempt class and deposited into a bank account normally retain exempt status. This general rule also applies to retirement accounts. For example, in In re Bresnahan, the debtor was a retired civilian United States Air Force employee who received annual lump sum retirement payments of $15,360.00 at the end of each year. 183 B.R. at 507. On January 24, shortly after receiving his annual pension distribution, the debtor filed for bankruptcy and claimed a $7,000.00 exemption in a checking account holding a portion of his lump sum retirement payment. Id. The court concluded that retirement funds in a checking account retain exempt status, reasoning that Daugherty applies with equal force to retirement funds as to personal earnings. Id. Similarly, in In re Phillips, a debtor retired due to a disability and requested a lump sum distribution from a deferred compensation plan. The court determined that allowing a debtor an exemption in a retirement account, but denying the exemption once the amount is withdrawn, is very similar to the outcome the Supreme Court of Ohio avoided in Daugherty. In re Phillips, No. 01-60366. However, in another Ohio case, two debtors pledged their IRAs as collateral for a business loan to fund the building of an I-Max theater. In re Roberts, 326 B.R. 424 (Bankr. S.D. Ohio 2004). The court noted that if the business was unable to make loan payments, the debtors may be forced to turn over their retirement accounts. Id. Therefore, the court denied the exemption, noting that "a debtor's pledge of his IRA as collateral for a loan, especially a business loan, is inconsistent with the need to protect that money as a future income stream for the debtor." Id. Courts in other jurisdictions have reached similar conclusions, distinguishing withdrawals from IRA accounts to cover retirement expenses (which remain exempt) from withdrawals from IRA accounts to cover nonretirement expenses (which are not exempt). In re Banks, 2014 WL 180693, at *2 (Bankr. C.D. Ill. 2014); In re Goldstein, 2011 WL 5909626, at *3 (Bankr. E.D.N.C. 2011); In re Phillips, 2006 WL 382145, at *2 (Bankr. C.D. Ill. 2006).

When interpreting bankruptcy statutes, courts first look to the text of the statute. Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 724 (2011). The protection of exempt property from "execution, garnishment, attachment, or sale," which the Supreme Court of Ohio found very important in Daugherty, remains equally applicable to retirement exemptions. O.R.C. § 2329.66(A); Daugherty, 504 N.E.2d at 1103. The statutory wording of the IRA exemption is also expansive, exempting a debtor's "rights or interests in the assets held in, or to directly or indirectly receive any *payment* or benefit under, any individual retirement account." O.R.C. § 2329.66(A)(10)(c) (emphasis added). The Ohio statute exempting certain tax refunds contains similar language, protecting a debtors "interest in . . . *payments* under [the earned income credit or child tax credit] of the Internal Revenue Code." O.R.C. § 2329.66(A)(9)(g) (emphasis added).

6

Numerous Ohio courts, relying on Daugherty and the language of the tax credit exemption, have held that a debtor's interest in certain tax credits is exempt after receipt by the debtor and deposit into a checking account. See, e.g., In re Patterson, 2010 WL 3606893; In re Yost, 2014 WL 2547714; In re Maine, 461 B.R. 723. Similarly, the court in In re Bresnahan, when analyzing the Ohio statute exempting pensions, determined that a debtor's pension withdrawals remain exempt based on the statute's protection of the "right to receive a *payment* under any pension, annuity, or similar plan or contract." O.R.C. § 2329.66(A)(10)(b) (emphasis added); In re Bresnahan, 183 B.R. at 508. The statute at issue in the current case similarly exempts the debtor's "rights or interests in the assets held in, or to directly or indirectly receive any *payment* or benefit under, any individual retirement account." O.R.C. § 2329.66(A)(10)(c). Courts in Ohio have consistently interpreted the word "payment" to include a debtor's withdrawals from otherwise protected accounts. In re Wood, 459 B.R. at 267. The statute simply refers to "payments," and does not distinguish between "payments owed" and "payments received." Id. "This court will not read words into a statute that the legislature did not elect to include and which would serve to limit the reformative purpose of the statute." Id. However, as In re Roberts makes clear, not all uses of retirement funds allow a debtor to retain an exemption.

While statutory text is always the starting point, courts also attempt to give effect to a statute's legislative purpose. Daugherty, 504 N.E.2d at 1103. When adopting the exemption for retirement assets, the Ohio legislature was encouraging debtors to save for retirement. In re Malsch, 400 B.R. 584, 590 (Bankr. N.D. Ohio 2008). Exemptions also serve the overarching exemption policy of allowing a debtor to retain sufficient assets to not become a public charge. Clark v. Rameker, 134 S. Ct. 2242, 2247 n.3 (2014); In re Wood, 459 B.R. at 269. These policies distinguish In re Bresnahan from In re Roberts. In In re Bresnahan, the debtor withdrew money during retirement for retirement and the assets remained exempt. However, in In re Roberts, the debtor withdrew money for a present business purpose unrelated to retirement and the exemption was lost. Therefore, the distinction between an exempt and nonexempt retirement withdrawal is the debtor's use of the funds. For example, payments from an earned income tax credit deposited into a checking account remain exempt. In re Wood, 459 B.R. at 270. The legislative policy behind the credit is to provide a debtor with a minimum standard of living, making a debtor's immediate deposit of the tax credit into a bank account entirely consistent with legislative policy. Id. Similarly, allowing an exemption in personal wages deposited in a bank account is entirely consistent with the exemption's policy of meeting the immediate requirements for the "maintenance and support of the debtor's family." Daugherty, 504 N.E.2d at 1103. However, the policy behind retirement exemptions is not immediate consumption, but instead to encourage debtors to save for retirement. In re Malsch, 400 B.R. at 590. Such policy would be frustrated if a debtor could withdraw funds from an IRA to pay for nonretirement expenses, and then turn around and claim any remaining funds as exempt. See In re Fitak, 121 B.R. 224 (S.D. Ohio 1990). Therefore, legislative policy is furthered if the exemption is available only for funds withdrawn from a retirement account during retirement, or before retirement if the funds are used in a manner reasonably certain to benefit the debtor in retirement.

7

**B. Trustee Did Not Carry Her Burden of Showing Debtors' Use of the IRA was for a Non-Retirement Purpose**

Trustee claims that retirement withdrawals must be placed in a personal checking account and used for the debtor's maintenance and support. Therefore, according to Trustee, because Debtors deposited their IRA into the D&D Account and used portions of the funds for business expenses, Debtors' IRA is no longer exempt. Debtors argue that the type of account their IRA was deposited into has little bearing on the availability of an exemption. Additionally, Debtors' state that because D&D is a sole proprietorship, Debtors and D&D are the same entity, so any funds spent towards D&D are by definition also spent on Debtors.

Trustee, applying a very narrow reading of Daugherty, states that courts "put great emphasis" on a debtor's deposit of otherwise exempt funds into a personal checking account. While Daugherty did involve a personal checking account, later decisions have not placed a heavy emphasis on where exempt assets are held. For example, courts have allowed debtor's to retain exempt property held in personal savings accounts, certificates of deposit, investment accounts (even with frequent trading activity), bank accounts held by a third party, or simply holding the assets in cash. In re Alam, 359 B.R. 142 (exempt funds held in an investment account with frequent trading activity); In re Wood, 459 B.R. 263 (exempt funds held in cash); In re Perkins, 2011 WL 4458961, at *4–5 (exempt funds held in a savings account); In re Hensley, 393 B.R. 186 (Bankr. E.D. Tenn. 2008) (exempt funds held in a third party's bank account); In re Smith, 242 B.R. 427, 434 (Bankr. E.D. Tenn. 1999) (exempt funds invested in a certificate of deposit). The United States Supreme Court agrees, noting that "technicalities of title and other formalities" are not the deciding factor in the availability of an exemption. Porter v. Aetna Cas. & Sur. Co., 370 U.S. 159, 161 (1962). Instead, the liquidity of the method of storage controls. For example, if otherwise exempt assets are placed in an illiquid form, such as an investment in real property, the exemption is lost. In re Alam, 359 B.R. at 150–51. However, investments into easy to access forms, such as checking accounts, savings accounts, stocks, bonds, or cash, maintain exempt status. Id. For example, in In re Hensley, a debtor's otherwise exempt Social Security benefits remained exempt even when deposited into a third party's bank account. 393 B.R. at 198. The court placed heavy emphasis on the relation of the debtor to the third party, noting that the two planned on purchasing a home together and that the transfer allowed the third party to qualify for a more favorable mortgage. Id. Therefore, even though the assets were held by a third party, they remained owned and easily accessible by the debtor. Id. The court concluded that "it was immaterial in whose hands the funds were being held because they were still owned by the respective debtors." Id. at 199. As long as Debtors' assets are liquid and accessible, the location of the funds is not determinative of exemption applicability.

Therefore, Trustee's argument that the depositing of the IRA exemption into the D&D Account results in the loss of the exemption is misplaced. First, D&D is a sole proprietorship owned by Debtors, making D&D and Debtors the same entity. Black's Law Dictionary, (9th ed. 2009) (Westlaw) (defining a sole proprietorship as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity"). However, even

8

if D&D and Debtors were separate entities, that alone would not destroy the exemption, as the D&D Account is a liquid investment in which Debtors have complete access.

Because the location of Debtors' funds is not dispositive, the court turns to the question of whether Debtors' IRA withdrawal was used in retirement or in a manner reasonably certain to benefit Debtors in retirement. The party challenging an exemption, in this case Trustee, bears the burden of showing the exemption is improper. Bankr. R. Fed. Pro. 4003. First, the court has no indication of Debtors' age. It is possible that Debtors are currently in retirement and run D&D to earn extra money. The court will not punish Debtors by denying their IRA exemption based on a decision to continue working in retirement. Trustee has also failed to show that Debtors' withdrawal, even assuming Debtors are not yet of retirement age and the IRA was used primarily for business purposes, is not reasonably certain to benefit Debtors once they reach retirement. D&D is a profitable enterprise, currently generating monthly profits in excess of $2,000.00. Debtors' problems do not appear to stem from D&D, but from unpaid medical bills, which account for 85% of the liabilities in Debtors' petition. The facts suggest that the continuing operation of D&D will actually enhance the assets available to Debtors in retirement, and potentially increase payments to creditors. If D&D were losing money and a key contributor to Debtors' financial problems, it is highly unlikely contributing additional assets towards D&D would be reasonably certain to provide Debtors with additional assets in retirement. D&D's positive track record separates the current case from In re Roberts, where using an IRA as collateral for the construction of an I-Max theater would have a very speculative effect on the debtor's retirement. 326 B.R. at 426–27. Trustee has failed to carry her burden of showing Debtors' IRA withdrawal was not to support Debtors in retirement, or not reasonably certain to increase the assets available to Debtors in retirement.

### C. Debtors' IRA Withdrawal is "Reasonably Traceable" using the Lowest Intermediate Balance Test

Based on the above, the remaining question is whether assets in the D&D Account are "reasonably traceable" to the Debtor's IRA. Daugherty, 504 N.E.2d at 1103; In re Alam, 359 B.R. 142. Courts have broadly defined "reasonably traceable," normally finding that funds remain traceable as long as there is a paper trail, even if such trail is complex. For example, in In re Alam, the debtor constantly moved exempt funds between accounts, including opening and closing numerous bank accounts, utilizing money market accounts, and investing in mutual funds. 359 B.R. at 150–51. However, based on various financial documents, the court was able to trace the path of the exempt funds. Id. Documentation is not always required, as in at least one instance assets held in cash satisfied the "reasonably traceable" requirement. In re Wood, 459 B.R. at 266–67. In the current case, Debtors have provided bank statements showing inflows and outflows from the D&D Account. Debtors' assets withdrawn from the IRA remain reasonably traceable.

The court now turns to the proper tracing method, which can greatly affect the value of an exemption. It is normally impossible to trace a specific dollar deposited into an account to a specific withdrawal. When a dollar is deposited into a bank account, that dollar is not set aside,

but instead is grouped together with other dollars to create an account balance. Therefore, the different tracing methods are "an equitable substitute for the impossibility of specific identification." In re Wood, 459 B.R. at 268 (internal quotation marks omitted).

Courts have generally applied three different tracing methods: (1) first-in first-out ("FIFO"); (2) a proportional method allocating spending according to the ratio of exempt funds to nonexempt funds ("Proportional Method"); or (3) the lowest intermediate balance test ("LIBT"). Under FIFO, a debtor's expenses are subtracted from the assets that have been in the account for the longest period of time. In re Maine, 461 B.R. at 731. For example, if a Debtor opened a bank account with a $4,000.00 deposit obtained through an exempt IRA withdrawal, and then deposited an additional $6,000.00 of nonexempt funds into the account, the IRA funds, as the oldest assets in the account, are first used to pay expenses. Therefore, if the debtor spent $3,000.00, the entire $3,000.00 would be allocated to the previously exempt IRA funds. The Proportional Method allocates expenses between exempt and nonexempt funds based on the percentage of each type of fund in the account at the time of the expense. Id. Therefore, based on the above example, 40% of the $3,000.00 withdrawal would be attributed to the previously exempt IRA, while the remaining 60% is attributed to nonexempt funds. Finally, under the LIBT, a debtor's expenses are first attributed to nonexempt funds, with any exempt funds held in a type of reserve. However, if the debtor's withdrawals cause the account to drop below the amount of exempt funds, the lowest balance the account reaches becomes the new exempt balance, even if the debtor deposits additional funds. Id. at 732.

Because money is fungible, no one tracing method is proper in every scenario, and instead courts must determine the proper method based on a case-by-case basis analysis. In re Wood, 459 B.R. at 268; In re Maine, 461 B.R. at 730. "[A] court should consider the intent of the parties, the policy underlying the exemption, and the general rule that exemptions are to be construed in favor of the debtor" when deciding on a tracing method. In re Wood, 459 B.R. at 268; In re Perkins, 2011 WL 4458961, at *4. In In re Perkins, the court was dealing with exempt student loan proceeds the debtor deposited into a bank account also containing nonexempt funds. The court applied the LIBT, noting that a debtor who takes out student loans likely intends to apply those funds towards educational expenses, not general living expenses. Id. Additionally, based on the timing of debtor's transactions, the LIBT resulted in the debtor retaining more of his exempt student loans. Id. The court rejected FIFO, as it resulted in the debtor first spending his student loan assets on everyday expenses, while protecting nonexempt assets. Id. Similarly, in In re Lantz, the court was analyzing a debtor's deposit of exempt homestead funds into a bank account. 451 B.R. at 848–49. The policy behind the homestead exemption is to allow a debtor to maintain a residence both for himself and his dependents. The court adopted the LIBT, noting it is "more consistent with the policy behind the exemption to presume that any money from a commingled account spent on things other than acquiring a new homestead . . . came from sources other than the homestead proceeds." Id. at 849. The proportional method suffers the same flaw as FIFO, as it assumes that a debtor intends to spend exempt funds in proportion to their weight in the account. When a debtor deposits student loan or homestead proceeds into a bank account, he likely intends to spend the entire balance on education or a new residence.

The court agrees with the reasoning from In re Perkins and In re Lantz. Retirement accounts, similar to student loans or homestead proceeds, are not intended for the payment of normal everyday expenses, but instead have a specific purpose. Funds held in retirement accounts, even if withdrawn and deposited into a checking account, are likely intended to be used on normal everyday expenses as a last resort. Additionally, the policy behind the retirement exemption, to encourage savings and to protect a debtor from becoming a public charge, is best instituted by a tracing method applying retirement funds last. LIBT is also relatively easy to apply and promotes uniformity and predictability, which are all attributes long valued by bankruptcy law. See U.S. Const. art. I, § 8, cl. 4; In re Maine, 461 B.R. at 733–34. While Ohio courts have applied all three tracing methods in the past, the recent trend in Ohio appears to be the use of the LIBT. In re Maine, 461 B.R. 723; In re Wood, 459 B.R. 263; In re Perkins, 2011 WL 4458961; In re Lantz, 451 B.R. 843; In re Yost, 2014 WL 2547714, at *4–5. Based on all of the above, the LIBT "upholds the policy of construing exemptions in favor of the debtor while ensuring fairness to creditors," while also being true to the policies behind the retirement exemption. In re Maine, 461 B.R. at 732

### 3. Debtors' IRA Withdrawal Remain Classified as an IRA

Based on the above, Debtors' IRA assets held in the D&D Account are exempt. Trustee however makes one last argument: that Debtors' IRA withdrawals lost their status as an IRA after the sixty day IRS rollover deadline passed. Under the Internal Revenue Code, a rollover of IRA funds, which is essentially a transfer of assets from one IRA to another IRA, can only occur within sixty days of the initial withdrawal. I.R.C. § 408(d)(3)(A)(i). If the funds are not rolled over in time, the withdrawal loses preferential IRS tax treatment and is classified as income to the owner. Id. § 408(d)(1). In the current case, Debtors withdrew their IRA from Raymond James on July 17, 2013, starting the sixty day rollover clock, which was set to expire on September 15, 2013. As of the commencement of Debtors' bankruptcy case on October 14, 2014, Debtors IRA funds remained in the D&D Account, which is well after the sixty day rollover period. In essence, Trustee argues that funds that do not qualify as an IRA under the IRS definition cannot be protected under an IRA exemption.

Trustee does not cite any cases supporting her position. The court was also unable to locate any Ohio cases examining the issue, but did identify cases in other jurisdictions. The cases are split, with some holding that failing to rollover funds forfeits the exemption, while others determine that rollovers have no bearing on exemption availability. See, e.g., In re Crum, 414 B.R. 103 (Bankr. N.D. Tex. 2009) (exemption lost without rollover); In re Patrick, 411 B.R. 659 (Bankr. C.D. Cal. 2008) (same); In re Sunstrom, 2012 WL 5305807 (Bankr. D. Md. 2012) (rollover has no bearing on exemption); In re Ladd, 258 B.R. 824 (Bankr. N.D. Fla. 2001) (same). While cases from other jurisdictions may be helpful, differences in exemption statutes may make direct comparisons difficult.

Under the Ohio statute, IRA accounts are exempt to the extent the debtor's annual contributions are within IRS tax deductibility limits, or are rolled over from one valid IRA account to another within the sixty day IRS timeframe. O.R.C. § 2329.66(A)(10)(c)(i), (iii). The

11

main effect of the Ohio rollover exemption is to allow debtors to move money between IRA accounts, such as when a debtor changes jobs, without violating the annual IRA contribution limits. Id. § 2329.66(A)(10)(c)(i), (iii).[3] Some jurisdictions have read a negative inference into a rollover exemption, specifically that the statutory allowance for rollovers implies that funds that are not rolled over lose the exemption. In re Patrick, 411 B.R. 659, 665 (Bankr. C.D. Cal. 2008). This court declines to read a negative inference into the statute. While the statue has a specific exemption for rollovers, simply allowing one type of exemption does not foreclose other exemption options. In re Ladd, 258 B.R. at 826. For example, imagine a retired debtor who makes a withdrawal from his IRA to cover six months of anticipated retirement expenses. However, the debtor encounters financial difficulties and files bankruptcy three months later. Because the debtor withdrew IRA funds to cover current retirement expenses, a rollover makes little sense. The debtor should not lose the exemption simply because he did not initiate an IRA rollover. From a practical standpoint, the court sees no reason to treat the IRA exemption of a retired debtor making monthly IRA withdrawals, and therefore avoids holding assets for longer than the sixty day rollover period, from the debtor in the example immediately above. See In re Phillips, No. 01-60366. Further supporting this position, exemptions should be "construed liberally in favor of debtors" and when it is "possible to construe an exemption statue in ways that are both favorable and unfavorable to a debtor, the favorable method should be chosen." Id. (internal quotation marks omitted). The court will not create a harmful new requirement for debtors that is not impelled by the statute or compelled by legislative intent.

Additionally, the wording of the Ohio retirement exemption is similar to the statutes in Maryland and Florida, two states that do not require a rollover for withdrawn IRA funds to remain exemption eligible. In re Massenburg, 508 B.R. 362 (Bankr. D. Md. 2014); In re Sunstrom, 2012 WL 5305807; In re Ladd, 258 B.R. 824. In Maryland, the retirement exemption protects "any money or other assets *payable* to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified [as an IRA under § 408] of the United States Internal Revenue Code." Md. Code Ann. Cts. & Jud. Proc. § 11–504(h) (emphasis added). Similarly, the Florida retirement exemption protects "any money or other assets *payable* to a participant or beneficiary from, or any interest of any participant or beneficiary in, an [IRA under § 408 of the IRC]." Fla. Stat. § 222.21(2)(a) (emphasis added). The Ohio statute contains very similar language, exempting a debtor's "rights or interests in the assets held in, or to directly or indirectly receive any *payment* or benefit under, any individual retirement account." O.R.C. § 2329.66(a)(10)(C) (emphasis added). In contrast, the federal bankruptcy exemption only exempt a debtor's "right to receive" certain types of retirement benefits (such as pensions and stock bonus plans) or IRAs "to the extent those funds are held in [a tax exempt account]," which courts have interpreted as causing the exemptions to be lost as soon as the retirement funds are withdrawn from the previously exempt account. 11 U.S.C. § 522(a)(3)(C), (a)(10); In re Gibson, 300 B.R. 866, 870 (Bankr. D. Md. 2003). By opting out of the federal scheme and implementing a statute exempting "money or other assets payable" or "any interest" in retirement assets, the

---

[3] The limit on annual contributions to an IRA account is $5,500.00, or $6,500.00 is the investor is over fifty years of age. These contribution limits do not apply to IRA rollovers. Related Topics – IRA Contribution Limits, Internal Revenue Service (Feb. 18, 2014), http://www.irs.gov/Retirement-Plans/Plan-Participant,-Employee/Retirement-Topics-IRA-Contribution-Limits.

Maryland legislature "indicated an intent to protect retirement funds in a bankruptcy proceeding to a greater degree than available under the federal law." Id. The Ohio legislature also adopted very broad language, protecting a debtor's "rights or interests in" or "any payment" from a qualified IRA, similarly evidencing an intent to expansively protect retirement assets. O.R.C. § 2329.66(A)(10)(c).

Finally, withdrawn IRA funds, even if not properly rolled over into a new IRA account within the sixty day time limit, may later become part of a different valid IRA. For example, a Roth IRA allows a debtor to invest post-tax funds (subject to annual contribution limits) into a tax-advantaged retirement account. I.R.C. § 408A. Therefore, Debtors, with proper pre-bankruptcy planning, likely could have invested a portion of their withdrawn IRA into a Roth IRA (even after the sixty day rollover time period), protecting the assets from creditors. Therefore, in opposition to Trustee's argument, missing the 60 day rollover window does not permanently exclude assets from becoming an IRA.

Based on the above, the simple fact that Debtors failed to reinvest their IRA withdrawals into a new IRA account within the time limits established by I.R.C. § 408(d)(3)(A) does not foreclose the possibility that Debtors' withdrawn IRA retains exempt status.

**Conclusion**

Trustee's Objection to Debtors' Claimed Exemptions is **DENIED**. Debtors are able to exempt their remaining interest in the IRA funds held in the D&D Account using the LIBT tracing method. The court was not provided with the necessary bank statements to calculate Debtors' current exempt balance.[4] If Trustee and Debtors cannot reach an agreement, the court will make a determination once presented with additional information.

It is so ordered.

# # #

**Service List**:

**George David Karn**
64 Rolling Acres Cir E
Massillon, OH 44647

**Deborah Ellen Karn**
64 Rolling Acres Cir E
Massillon, OH 44647

---

[4] The court has been provided with D&D Account bank statements for July, September, and October of 2013. However, as Debtors' IRA funds were deposited into the D&D account in July, and Debtors filed bankruptcy in October, the missing August bank statement forecloses the court from conducting an IRA tracing calculation.

13

**Donald M Miller**
1400 Market Ave N
Canton, OH 44714-2608

**Toby L Rosen**
Toby L Rosen, Trustee
400 W Tuscarawas St
Charter One Bank Bldg, 4th Floor
Canton, OH 44702